David K. Isom (4773)
ISOM LAW FIRM PLLC
299 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 209 7400
david@isomlawfirm.com

Attorney for Defendant J. Hoyt Stephenson

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRENT MIDDLETON as Trustee of the National Financial Systems Management, Inc. Employee Stock Ownership Plan, et alia,<br><br>          Plaintiffs,<br><br>vs.<br><br>J. HOYT STEPHENSON,<br><br>          Defendant. | **MEMORANDUM IN SUPPORT OF STEPHENSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**HEARING REQUESTED**<br><br>2:11-cv-00313-TS<br><br>Judge Ted Stewart |

Defendant J. Hoyt Stephenson (Stephenson) respectfully moves pursuant to Rule 56(a) of the Federal Rules of Civil Procedure for a partial summary judgment dismissing with prejudice plaintiffs' Second and Fifth Claims for Relief on the grounds that the transactions at issue were not prohibited, as alleged by plaintiffs, either by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, or by the Internal Revenue Code of 1986 (the "Code"), as amended.

**INTRODUCTION**

National Financial Systems Management, Inc. ("NFSM") and the NFSM Employee Stock Ownership Plan (the "NFSM ESOP") were established in 2003 in Utah. From its creation in 2003 at least through the date of the March 31, 2011 complaint in this action, the NFSM ESOP owned 100% of the stock of NFSM.

In 2003, NFSM entered into a contract with two Utah companies, National Financial Systems, Inc. ("NFS") and Metronomics, Inc. ("Metro"), to provide employee leasing and accounting and financial services to NFS and Metro. Stephenson founded NFS and Metro in the 1980s to provide financial services to health fitness clubs around the country, and Stephenson owned 100% of the stock of NFS and Metro at the time the stock was sold to NFSM as set forth below.

Effective October 15, 2007, NFSM bought all of the NFS stock from Stephenson (the "2007 Sale") for a total purchase price of $2.9 million pursuant to the terms of a written Stock Purchase Agreement under which NFSM paid Stephenson $1 million in 2007 and issued Stephenson a Promissory Note for $1.9 million. Effective January 15, 2008, NFSM bought all of the Metro stock from Stephenson (the "2008 Sale") for a total purchase price of $10,310,000 pursuant to the terms of a written Stock Purchase Agreement under which NFSM was to pay Stephenson $1 million in cash, waive payment of receivables due from Stephenson and other consideration in the amount of $517,814, and issue a Promissory Note to Stephenson for $8,792,186.

Effective June 27, 2009, NFSM acknowledged in Default Agreements that it had defaulted on its payment obligations to Stephenson under the 2007 Sale and the 2008 Sale and agreed to transfer the NFS and Metro stock back to Stephenson as provided

for by the terms of the respective Stock Purchase Agreements.  The Default Agreements were between Stephenson and NFSM pursuant to the respective Stock Purchase Agreements for the NFS and Metro stock, wherein NFSM consented to Stephenson's foreclosure on the NFS and Metro stock.

Stephenson sold the repossessed NFS and Metro stock to Thrive National, a sole proprietorship owned by Bailey Hall ("Hall") pursuant to a Purchase Agreement dated as of June 30, 2009 (the "2009 Sale").  (The Default Agreements and the 2009 Sale are referred to collectively below as the "2009 Transactions."  The 2007 Sale, the 2008 Sale and the 2009 Transactions are referred to jointly as the "Sales.")  Later in 2009, Thrive National was incorporated as Thrive National Corporation ("Thrive") and ultimately, Thrive, as the successor to Thrive National, became the purchaser of the NFS and Metro stock in the 2009 Sale.  Hall personally guaranteed all payments due by Thrive under the 2009 Sale.[1]

There are four types of entities to consider relating to this Motion: (1) NFS and Metro, which were privately-held companies 100% owned by Stephenson at the time of the Sales; (2) Hall, an individual, who owned some or all of Thrive and guaranteed the purchase of the NFS and Metro stock under the 2009 Sale; (3) NFSM, the plan sponsor of the NFSM ESOP, whose stock was 100% owned by the NFSM ESOP; and (4) the NFSM ESOP, whose assets were held in the NFSM ESOP Trust.

---

[1]  For reasons that are not clear, plaintiffs do not even mention Thrive in the complaint, but assert that the purchaser was Hall.  For the purpose of this Motion, it does not matter whether the purchaser was Hall or Thrive, since neither was a plan subject to ERISA nor did the 2009 Sale involve "plan assets" of the NFSM ESOP.

This case was brought by the alleged trustee and certain alleged participants of the NFSM ESOP against Stephenson.  The complaint asserts five claims against Stephenson.  By this Motion, Stephenson seeks summary judgment on the Second and Fifth Claims for Relief.

Plaintiffs' Second and Fifth Claims for Relief against Stephenson have two fatal flaws.  Contrary to fact and law:  (1) plaintiffs ask the Court treat the purchasers (NFSM in 2007 and 2008 and later Hall or Thrive in 2009[2]) of the NFS and Metro stock as though the purchasers were ERISA plans; and/or (2) plaintiffs ask the Court treat the NFS stock and Metro stock and other alleged assets of NFSM as if the assets were assets of the NFSM ESOP, or "plan assets," for purposes of the prohibited transactions provisions of ERISA and the Code.  As discussed below, neither the facts nor the law support these claims.

Plaintiffs' Second Claim makes two separate allegations.  First, it alleges that the 2007 Sale and the 2008 Sale violated section 406(a) of ERISA[3].  Second, it alleges that Stephenson violated section 406(b) of ERISA by dealing with plan assets for his own interest or acting in transactions involving the NFSM ESOP where his interests were adverse to the interest of the ESOP and the ESOP participants.[4]  Plaintiffs' theory apparently is that any company owned by an ESOP *is* an ESOP, the company's assets

---

[2]  It is unclear whether plaintiffs have pleaded or intended to plead that the 2009 Sale was a prohibited transaction.  For completeness, however, given that paragraphs 110 – 116 of the Complaint complain about the 2009 Sale, and that the Second Claim incorporates those averments by reference, this Motion assumes that plaintiffs intended to include the 2009 Sale as an alleged prohibited transaction.

[3] Complaint  ¶ 130

[4] Complaint ¶¶ 131-132

*are* plan assets, and any person who transacts business with the company is subject to the same ERISA prohibitions as if that person were transacting business with the ESOP.[5]   The prohibited transaction statutes, regulations and cases, however, clearly mandate that a company owned by an ESOP is not the ESOP, the underlying assets of a company wholly owned by an ESOP are not plan assets under the circumstances here, and a transaction between a company owned by an ESOP and any other party is not a prohibited transaction merely because the company is wholly-owned by the ESOP.

Plaintiffs' Fifth Claim alleges that the Sales violated the prohibited transaction provisions of section 4975 of the Code, and that this Court should therefore not enforce the Sales as a matter of public policy.   However, as outlined below, plaintiffs' claims should be rejected because the Sales were not prohibited under the Code for the same reasons as they were not prohibited under ERISA.   NFSM and its underlying assets are not "plan assets" for purposes of section 4975 of the Code.

An ESOP is a type of ERISA plan that is designed to serve both as an employee benefit plan and a technique of corporate finance specifically designed by Congress to allow transactions between the owner of an ESOP sponsoring entity and the ESOP itself.   As discussed below, ERISA and the Code specifically address this issue and mandate that a company wholly-owned by an ESOP is not a "plan asset" for prohibited transaction rules of ERISA or the Code and that the sole asset of any such ESOP is limited to the stock of the wholly-owned company.   If this were not so, any company

---

[5]   Complaint ¶ 132 ("every transaction with NFSM necessarily involves the ESOP because the ESOP owns NFSM")

owned by an ESOP would not be able to function as envisioned by Congress because ERISA fiduciary duties would be implicated by every corporate action.

## UNDISPUTED MATERIAL FACTS

There is no genuine dispute about the following statement of facts ("SOF") which, for purposes of this motion only, Stephenson accepts as true:

1.      At all relevant times, NFSM was a corporation duly organized under the laws of the State of Utah.[6]

2.      At all relevant times, the NFSM ESOP was an employee benefit plan and employee stock ownership plan subject to ERISA[7], including ERISA §§ 406 & 407, and I.R.C. § 4975.[8]

3.      NFSM was not an ERISA plan.[9]

4.      At all relevant times, the NFSM ESOP owned all the outstanding shares of NFSM.[10]

5.      At all relevant time, NFSM was the "plan sponsor" of the NFSM ESOP within the meaning of ERISA § 3(16)(B).[11]

6.      At all relevant times, all participants in the NFSM ESOP were employees or former employees of NFSM.[12]

---

[6] Complaint ¶ 1

[7] 29 U.S.C. § 1001 et. seq.

[8] Complaint ¶¶ 2 – 4, 127 – 132, 145 – 148

[9] Complaint ¶¶ 1 – 4

[10] Complaint ¶ 3

[11] Complaint ¶ 3

7.      Effective October 15, 2007, Stephenson entered into the Stock Purchase Agreement with NFSM attached hereto as Exhibit 2 pursuant to which NFSM purchased all the outstanding stock in NFS (the "2007 Sale").[13]

8.      Effective January 15, 2008, Stephenson entered into the Stock Purchase Agreement with NFSM attached as Exhibit 3 pursuant to which NFSM purchased all the outstanding stock of Metro (the "2008 Sale").[14]

9.      Effective June 27, 2009, Stephenson entered into two Default Agreements with NFSM pursuant to which NFSM acknowledged that it had defaulted on payments due under the 2007 Sale and 2008 Sale and agreed to transfer the NFS and Metro stock back to Stephenson (the "Default Agreements").[15]

10.     Effective June 30, 2009, Stephenson entered into a Purchase Agreement[16] pursuant to which Hall (or Thrive) purchased all of the outstanding stock of NFS and Metro from Stephenson (the "2009 Sale").

## ARGUMENT

The above undisputed facts show that the stock of NFS and Metro was never an asset of the NFSM ESOP, that NFSM was not an ESOP or "plan" within the meaning of ERISA or the Code, and that the 2007 Sale, the 2008 Sale and the 2009 Transactions

---

[12] Complaint ¶ 36

[13] Attached hereto as Exhibit 2, authenticated at Stephenson Declaration ¶ 4, which is attached hereto as Exhibit 1

[14] Attached hereto as Exhibit 3, authenticated at Stephenson Declaration ¶ 5, Exhibit 1

[15] Exhibits A & B to the 2009 Purchase Agreement attached as Exhibit 4, authenticated at Stephenson Declaration ¶ 6, Exhibit 1

[16] Exhibit 4, authenticated at Stephenson Declaration ¶ 6, Exhibit 1

and any alleged related transactions with NFSM are not prohibited transactions under ERISA or the Code.

## I. The Sales Were Not Transactions Prohibited by ERISA

Plaintiffs' Second Claim asserts that:  (1) the 2007 Sale and the 2008 Sale were sales of plan assets "between the plan and [Stephenson]"[17] prohibited by ERISA section 406(a)(1)(A); and (2) that the Sales constituted "deal[ing] with plan assets"[18] or "acting in transactions involving the [NFSM] ESOP"[19] prohibited by ERISA section 406(b). None of these transactions is a prohibited transaction under section 406, however, because NFSM should not be treated as an ERISA plan, the NFS and Metro stock was not a plan asset, the other alleged assets of NFSM were not plan assets, and the transactions were not sales to the NFSM ESOP or transactions involving the NFSM ESOP within the meaning of ERISA.

### A. The 2007 Sale and the 2008 Sale Were Not Sales to the NFSM ESOP and Did Not Violate ERISA Section 406(a).

ERISA section 406(a)(1)(A) provides in pertinent part:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing, of any property *between the plan and a party in interest. . . .*" (Emphasis added.)

Neither the 2007 Sale nor the 2008 Sale was to the NFSM ESOP.  The 2007 Sale and the 2008 Sale were sales to NFSM, not to the NFSM ESOP.[20]  These sales

---

[17] Complaint ¶ ¶ 127, 130

[18] Complaint ¶ 131

[19] Complaint ¶ 132

[20] SOF 1 - 3, 7 & 8

are not prohibited by ERISA section 406(a) because the plain language of the statute requires that the sales be between a "plan and a party in interest."  NFSM should not be treated as an ERISA plan simply because it is wholly owned by an ESOP.    For example, in *Andrade v. Parsons Corporation,*[21] the Ninth Circuit held that the sale of stock that was not a plan asset was not a prohibited transaction under Section 406(a) even though the acquiring company was indirectly owned by an ESOP.

Plaintiffs seem to assert that NFSM should be deemed to be an ESOP or a "plan" for purposes of section 406(a) of ERISA.  NFSM is clearly not a plan itself under ERISA because it does not satisfy ERISA's definition of a "plan" since it is neither an employee welfare benefit plan nor an employee pension benefit plan.[22]  Therefore, the 2007 Sale and the 2008 Sale are not prohibited under section 406(a) of ERISA because they were not between "a plan and a party in interest" as required by the statute.

### B. The NFS Stock, the Metro Stock and the Other Assets of NFSM Were Not Plan Assets and None of the Sales Violated ERISA Section 406(b).

ERISA's regulations make it clear that, even though the NFSM ESOP owned all of the stock of NFSM and NFSM was the plan sponsor,[23] NFSM's underlying assets were not "plan assets" for purposes of ERISA.[24]   These ERISA regulations specifically

---

[21] 1992 U.S. App. LEXIS 18220 (9th Cir. 1992)

[22] ERISA § 3(3)

[23] SOF 4 and 5

[24] 29 C.F.R. §§ 2510.3-101 *et al*. The plan asset regulations describe what constitutes assets of a plan for purposes of Subtitle A, and Parts 1 and 4 of Subtitle I of ERISA, of Title I of the Act and section 4975 of the Code.  *See* 29 C.F.R. § 2510.3-101(a)(1).  The prohibited transaction rules found in ERISA § 406, 29 U.S.C. § 1106, are located in Part 4 of Subtitle I of ERISA.

provide that ESOP ownership of an entity (even if the entity is wholly-owned by an ESOP) does not convert the underlying assets of that entity into "plan assets" under the conditions present here:  (1) where an "eligible individual account plan" (as defined in ERISA section 407(d)(3)) maintained by an employer, (2) owns all of the outstanding equity interests of the entity in the form of "qualifying employer securities" and (3) where "substantially all of the participants in the plan(s) are, or have been, employed by the issuer of such securities…."[25]   The undisputed facts of this case satisfy these requirements.  The NFSM ESOP is an individual eligible account plan as defined in section 407(d)(3) of ERISA since section 407(d)(3) defines the term to include, among other plans, an employee stock ownership plan.   The stock of NFSM owned by the NFSM ESOP constitutes "qualifying employer securities" under ERISA section 407,[26] and substantially all the participants of the NFSM ESOP were employed by NFSM.[27] As a result, the sole "plan asset" of the NFSM ESOP is the stock of NFSM and not the underlying assets of NFSM.   In *Armstrong v. Amsted Industries*, the court held that the assets of an ESOP were limited to the shares of the company wholly owned by the ESOP and not to assets acquired and owned by such wholly owned company.[28]

Any transactions or dealings that Stephenson may have had with the underlying

---

[25]  29 C.F.R. §§ 2510.3-101(h)(3)

[26] ERISA § 407(d)(5) defines "qualifying employer securities" for an eligible individual account plan to include an "employer security which is …stock…."   An "employer security" is defined to mean "a security issued by an employer of employees covered by the plan…."   ERISA § 407(d)(1).

[27] SOF 6

[28] 2004 U.S. Dist LEXIS 14776 (N.D. Ill. 2004)

assets of NFSM were not dealings with "plan assets" nor did they involve the NFSM

ESOP within the meaning of section 406(b) of ERISA.  None of the Sales dealt with the

stock of NFSM.  The 2007 Sale and the 2008 Sale were sales of NFS and Metro stock

directly to NFSM.  Any assets of NFSM paid to Stephenson in connection with these

transactions are also not "plan assets." The 2009 Transactions included a written

acknowledgment of default by NFSM, the transfer of the NFS and Metro stock by NFSM

back to Stephenson, and the subsequent sale of the NFS and Metro stock by

Stephenson to Hall (or Thrive).[29] The default and transfer of the NFS and Metro stock

back to Stephenson were acts of NFSM, not the NFSM ESOP, and the subsequent sale

of the NFS and Metro Stock by Stephenson was to Hall (or Thrive), who were not

"plans" subject to ERISA.[30]

The sale of the NFS and Metro stock to NFSM did not transform the stock into an

asset of the NFSM ESOP even though NFSM was wholly owned by the ESOP.  That is,

such stock did not become a plan asset when acquired by NFSM, and the sale or other

transactions with NFSM involving such stock and other assets of NFSM are not

prohibited transactions under section 406(b) of ERISA.[31]  In *Martin v. Feilen,*[32] the court

held that certain transactions were not subject to ERISA where an ESOP was not a

party to the transaction even if the transaction indirectly injured the ESOP. Since

NFSM's assets were not plan assets when owned by NFSM, they did not become plan

---

[29] SOF 9

[30] SOF 10

[31] *See Andrade, supra; Armstrong, supra*

[32] 965 F.2d 660, 668  (8th Cir. 1992)

assets in connection with the 2009 Transactions.

Thus, ERISA, its regulations and cases make it clear that because Stephenson did not "deal" with plan assets and the Sales did not "involve" the NFSM ESOP, the Sales were not prohibited by section 406(b) of ERISA.

## II.    The Sales Were Not Transactions Prohibited by the Code

Plaintiffs' Fifth Claim alleges that the NFS and Metro sales were prohibited transactions under the Code.[33]  For the same reasons outlined above with respect to ERISA, the sales of the stock of NFS and Metro to NFSM (and later to Hall or Thrive) were not "prohibited transactions" under the section 4975 of the Code.

The same rules outlined above clearly apply when determining whether a prohibited transaction has occurred under section 4975 of the Code for the reasons set forth below.  First, the relevant language of both statutes relating to prohibited sales is identical.  Both ERISA § 406[34] and I.R.C. § 4975[35] define a prohibited sale with the same relevant language:  "sale or exchange, or leasing, of any property between the plan" and another person.  Second, as with ERISA, any prohibited transaction under section 4975[36] of the Code requires dealing with the "income or assets of a plan."  Third, the same ERISA "plan asset" regulations apply for purposes of determining what is a

---

[33] Complaint ¶ 149

[34] ERISA § 406(a)(1)(A)

[35] I.R.C. § 4975(c)(1)(A)

[36] I.R.C. § 4975(c)(1)(E)

prohibited transaction under section 4975[37] of the Code.  Finally, the introduction to the "plan asset" regulation provides that the same regulations and exemptions discussed above defining "what constitutes assets of a plan with respect to a plan's investment in another entity." [38]   Accordingly, the sales of the stock of NFS and Metro were not "prohibited transactions" under the section 4975 of the Code.

## CONCLUSION

Stephenson respectfully requests that the Court grant Stephenson's motion for partial summary judgment and dismiss plaintiffs' the Second and Fifth Claims with prejudice.


 Date:  August 31, 2011

ISOM LAW FIRM PLLC


By:/s/ David K. Isom_____
David K. Isom

Attorney for Defendant
J. Hoyt Stephenson

---

[37] I.R.C. § 4975(c)(1); Reorganization Plan No. 4 of 1978, 3 C.F.R. 332 (1979), 92 Stat. 3790.

[38]29 C.F.R. § 2510.3-101(h)(3) applicable to ESOPs apply both to ERISA (section 406) and section 4975 of the Code.  29 C.F.R. § 2510.3-101(a)(1)

**Certificate of Service**

The undersigned hereby certifies that on this 31st day of August 2011, a true and correct copy of the foregoing Memorandum in Support of Stephenson's Motion for Partial Summary Judgment was served by ECF upon all counsel of record.

David K. Isom_____