IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BRENT MIDDLETON as Trustee of the National Financial Systems Management, Inc. Employee Stock Ownership Plan, et al.,<br><br>      Plaintiffs,<br><br>vs.<br><br>J. HOYT STEPHENSON,<br><br>      Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br><br><br>Case No. 2:11-CV-313 TS |

   This matter is before the Court on Defendant's Motion for Partial Summary Judgment. Defendant asks the Court to grant summary judgment on two of Plaintiffs' claims against him. The Court will grant the Motion as to both claims for the reasons set forth below.

I.  BACKGROUND

   In 2003, Defendant J. Hoyt Stephenson incorporated National Financial Systems Management, Inc. ("NFSM").  As part of the incorporation, the board of NFSM created an employee stock ownership plan ("ESOP"), and put all of NFSM's stock into the plan, creating the NFSM ESOP ("the Plan").  Stephenson was designated as a Plan trustee.  NFSM's revenue

came in the form of "management fees" paid to NFSM by two companies also owned by Stephenson—National Financial Systems, Inc. ("NFS") and Metronomics, Inc. ("Metro"). Ninety percent of NFS and Metro's profits were paid to NFSM.

On October 15, 2007, NFSM purchased NFS. NFSM made an up front payment for a percentage of the purchase price and issued a promissory note for the balance. On January 15, 2008, NFSM bought Metro in the same manner.

On June 27, 2009, Stephenson entered into "default agreements" with NFSM, in which NFSM acknowledged it was in default on both the NFS and Metro notes. NFSM then transferred all NFS and Metro stock back to Stephenson. Stephenson did not refund any payments from NFSM for NFS and Metro. Stephenson subsequently sold NFS and Metro to another person.

Plaintiffs bring claims under ERISA, claiming that Stephenson violated his fiduciary duties as trustee of the ESOP by engaging in prohibited transactions with Plan assets when he bought NFS and Metro as the head of NFSM, and when he entered into default agreements returning NFS and Metro to himself. Plaintiffs further allege violations of the United States Tax Code, for the same reasons. Stephenson argues that these transactions were not subject to ERISA fiduciary duties nor prohibited by the United States Tax Code.

## II.  STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[1] The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of

---

[1] *See* Fed.R.Civ.P. 56(a).

material fact.[2] "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial."[3] "An issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[4]

### III. DISCUSSION

Defendant moves for summary judgment on Plaintiffs' second and fifth causes of action. Plaintiffs' second cause of action alleges violations of ERISA's prohibited transactions and self dealing provisions. Plaintiffs' fifth cause of action alleges that the transactions in question were prohibited under the United States Tax Code. Both parties agree that all arguments relating to the second cause of action apply without alteration to the fifth. Thus, each of Plaintiffs' ERISA claims will be discussed in turn, and all analysis will be equally applicable to Plaintiffs' tax code claims.

A.   PROHIBITED TRANSACTIONS

Plaintiffs first argue that Stephenson has violated 29 U.S.C. § 1106(1)(a). That statute governs the behavior of fiduciaries of plans like the ESOP in this case. The disputed provision prohibits a fiduciary from "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing, of any property between the plan and a party in interest." Three transactions may fall under the statute:

---

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[3] *Sally Beauty Co., Inc., v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

(1) the sale of NFS by Stephenson to NFSM; (2) the sale of Metro by Stephenson to NFSM; and (3) NFSM's default agreement, which returned NFS and Metro back to Stephenson.

Plaintiffs' claims against Stephenson rest on the assumption that, because NFSM was wholly owned by the ESOP, transacting with NFSM is the same as transacting with the Plan. ERISA's definition of a plan does not directly address whether entities within the plan constitute the plan itself: "any plan, fund, or program which . . . is established or maintained by an employer . . . to the extent that . . . such plan, fund, or program provides retirement income to employees."[5] Nor does there seem to be any case that addresses the precise question.[6] A close inspection of the language of § 1106 indicates that the disputed transaction here is not a transaction between the Plan and a party in interest.

---

[5] 29 U.S.C. § 1002(2)(A) (2008). A Department of Labor regulation interpreting ERISA provides guidance on what constitutes the assets of a plan, a question that becomes important further on in this Order. 29 C.F.R. § 2510.3-101. The regulation makes clear that the investments of a plan are considered assets of the plan. *Id.* Thus NFSM stock, being an investment of the NFSM ESOP, is an asset of the NFSM ESOP. However, the regulation does not actually speak to whether dealing with the company, whose stock is held by the plan, is the same as dealing with the plan.

[6] Stephenson does cite to one unpublished Ninth Circuit case, *Andrade v. Parsons*, 1992 WL 182218 (9th Cir. July 31, 1992), which Stephenson claims answers the question. The case does involve an ESOP and a wholly owned company, and the court does conclude that a purchase by the company of stocks from purported parties in interest to the ESOP is permissible. *Id.* at *3. However, the court's reasoning is sparse and somewhat confusing. The court holds that "the type of stock transaction was not a prohibited one, as the [purchased shares] were never assets (or property) of the plan." *Id.* But this seems to avoid the question, which is whether the wholly-owned company would be considered a plan in the transaction. Even though the purchased stock was not a plan asset when purchased, if the wholly-owned company could be considered a plan, then anything the wholly owned company exchanged for the stock would be a plan asset. In light of this confusion, the Court finds this case unhelpful.

A sale or exchange is commonly understood to encompass the transfer of something owned by one party in return for something of value owned by the other.[7] Here, those parties would be the Plan and Stephenson. It follows that a sale or exchange between a plan and a party in interest would involve an exchange of some form of *plan property*.

A Department of Labor regulation interpreting ERISA—29 C.F.R. § 2510.3-101(a)(2)—provides guidance on what constitutes the assets of a plan.[8] The regulation states that the assets of an entity in which an ESOP invests are not plan assets if the entity is an operating company. An operating company is defined as "an entity that is primarily engaged, directly or through a majority owned subsidiary or subsidiaries, in the production or sale of a product or service other than the investment of capital."[9]

Plaintiffs argue that NFSM is not an operating company because its primary purpose is the investment of capital. This argument is based on Plaintiffs' theory that NFSM did not actually manage NFS and Metro—rather, NFS and Metro's profits were simply routed to NFSM because of its favorable tax status. Because NFSM then took that money and "invested" it in NFS and Metro stock, Plaintiffs argue that NFSM's primary purpose was in fact to invest capital

---

[7]The Merriam-Webster Dictionary defines sale as "transfer of ownership of property from one person in return for money." Home & Office Ed. at 462 (1998). "Exchange" is "the giving or taking of one thing in return for another." *Id.* at 180.

[8]Another provision of the same regulation, § 2510.3-101(h)(3), also speaks to the issue of whether the assets of a wholly owned entity belong to the plan. Both parties agree that under this regulation NFSM's assets would not be considered Plan assets. Plaintiffs claim, however, that § 101(h)(3) is not the only provision under which NFSM's assets could be deemed plan assets, and thus turn their attention to 101(a)(2).

[9] 29 C.F.R. § 2510.3-101(c).

for NFS and Metro, and, by extension, Stephenson. In his reply brief, Stephenson describes the structure of NFSM and the responsibilities of its employees:

> NFSM was established to provide management, administrative and employee leasing service for NFS and Metro. At the time stated, NFSM had over 120 employees, while NFS and Metro had no employees. NFSM had a contractual duty to provide, and did provide, general accounting, bookkeeping . . . and business services to enable NFS and Metro to meet their obligation to their customers. NFS and Metro held contracts with health club customers that obligated them to provide accounts receivable management and club management software services tailored to the health and fitness club industry. Together, NFS and Metro serviced over 600 locations with over 500,000 members. Virtually the only income NFSM received was income from NFS and Metro paid under the NFS and Metro Management Agreements for the services summarized above.[10]

Though this detail was provided for the first time in Stephenson's reply brief, the Court notes that Plaintiffs offered no evidence demonstrating that NFSM was not so structured. Plaintiffs thoroughly investigate NFSM's tax returns in pursuit of their "favorable tax status" theory, but do not comment on the fact that NFSM employed 120 people, much less offer facts showing that these employees invested capital as their primary responsibility. In light of Stephenson's statement about what the employees of NFSM did, and the evidence supporting it, the Court assumes that Plaintiffs offered no contrary evidence because there was none to offer. Accordingly, the Court finds that NFSM, with its many employees, provided management services and was not primarily in the business of investing capital. This finding necessitates a finding that NFSM was an operating company.

Because NFSM is an operating company, the Plan's property is limited to NFSM stock. Furthermore, because no NFSM stock was sold or exchanged in the disputed transactions, the

---

[10]Docket No. 25, at 4.

transactions cannot have been between the Plan and a party in interest.  Accordingly, the Court finds that NFSM's dealings with Stephenson as owner of NFS and Metro were not transactions between the Plan and a party in interest, and thus were not subject to the prohibited transaction provisions of 1106(a)(1).

Plaintiffs rely heavily on *Marshall v. Snyder*[11] to upend this analysis.  According to Plaintiffs, *Marshall* held that RPI, a company wholly owned by an ERISA plan, could not spend its money without complying with ERISA fiduciary requirements—implying that RPI's money was plan property.  Strictly speaking, this is a correct characterization.  But the court's holding did not actually turn on whether RPI was owned by the plan.  In *Marshall*, RPI administered the plan,[12] was funded with payments from the plan, and, it turned out, was using those funds to pay people who were not actually doing work for the plan.[13]  The court's holding was not that RPI was subject to fiduciary duties because it was wholly owned by the ESOP.  Rather, RPI was subject to fiduciary duties because it administered the plan.  In contrast, NFSM is not an administrator for the Plan, and was not using funds paid to it by the Plan for administrative services to pay for other things.  Thus, *Marshall*'s holding that RPI could not spend its money without complying with ERISA fiduciary duties has no application to the instant case.

Plaintiffs' statutory interpretation argument to the contrary is also unavailing.  The relevant provision of ERISA prohibits a fiduciary from engaging in a transaction that "constitutes

---

[11] 430 F. Supp. 1224 (E.D.N.Y. 1977).

[12] *Id.* at 1228.

[13] *Id.* at 1229.

a *direct or indirect* . . . sale or exchange, or leasing, of any property between the plan and the party in interest." Plaintiffs, citing the well accepted principle that a statute must be read so as to give each word effect, argue that if the statute doesn't prohibit the transaction at issue then the word "indirect" is redundant. In other words, Plaintiffs ask the Court to read the relevant provision to prohibit both exchanges/sales of property between the plan and a party in interest (direct sales) and exchanges/sales between parties in interest and things owned by the plan (indirect sales). But an inspection of the statutory language demonstrates that "indirect" need not encompass the situation here in order to have a separate meaning from "direct." Both "direct" and "indirect" modify the verbs that follow—"sale," "exchange," and "leasing"—which, in turn, define transactions that take place between the plan and a party in interest. Read with this relationship in mind, the language would prohibit both (1) a sale that was directly to a party in interest from the plan and (2) a sale by the administrator of plan assets to a third party, which third party then gives the same assets to a party in interest (as long as the administrator knew or should have known the property was headed to a third party). Reading the statute this way, it is not necessary to make "indirect" applicable to the present situation—one where a plan is "indirectly" involved in a prohibited transaction because a company it owns is buying something from a purported party in interest—in order to save "indirect" from redundancy.

      On this understanding of the statute, the exchanged property would have to reach the party in interest or the plan, either directly or indirectly, to be a prohibited transaction. The present transaction is clearly not covered. NFSM has entered into direct transactions with Stephenson as owner of NFS and Metro, and the transaction stopped there. Money and a

promissory note were given to Stephenson, NFS and Metro stock was given to NFSM. But NFS and Metro were never subsequently delivered or sold to the Plan. Nor did the Plan give NFSM the money it used to purchase the companies from Stephenson. Accordingly, there has never been a transaction between the plan and the party in interest, either direct or indirect.

In addition to these arguments, it is well accepted that "the ERISA scheme envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer. ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets."[14] This is true even if the actions taken by the employer negatively affect the value of ESOP assets.[15] Thus, as a separate ground for denying Plaintiffs' prohibited transaction claim, it appears that if Stephenson was not acting in his role as plan trustee when he participated in the decision to buy or relinquish NFS and Metro, he was not required to comply with fiduciary responsibilities.

NFSM voted, through its board, to purchase NFS and Metro and to relinquish them. The purchase was not undertaken or paid for by the Plan. Though the parties dispute to what extent Stephenson participated in the decision, even if the Court were to assume that Stephenson was fully involved, the outcome would remain the same. The decision was made for NFSM as a business and not the for the ESOP, with NFSM capital by NFSM board members acting in their

---

[14]*Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir. 1986).

[15]*Phillips v. Amoco Oil Co.*, 614 F. Supp. 694, 717 (D. Ala. 1985) ("[T]he fiduciary duty provisions of ERISA are not implicated in the sale of a business or a portion of a business merely because the terms of the sale will affect the terms and conditions of contingent future benefits.").

NFSM capacities. Thus, the Court finds that, to whatever extent he was involved in the decisions, Stephenson was not subject to fiduciary responsibilities when making them.

In light of the foregoing, the Court holds that there is no material dispute of fact as to whether Stephenson has violated § 1106(a)(1) and that Stephenson is entitled to judgment as a matter of law because: (1) the sale of NFS and Metro, as well as their return to Stephenson, were not transactions between a plan and a party in interest, and (2) to the extent Stephenson took part in the transactions, he was not acting on behalf of the plan and thus was not subject to ERISA fiduciary duties.

B.   SELF DEALING

Plaintiffs also argue that Stephenson violated § 1106(b)(1) and (2). Section (b)(1) prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." The supposed assets of the plan that Stephenson has dealt with "in his own interest" would be the cash used to buy NFS and Metro and then NFS and Metro themselves. But as discussed above, these are not plan assets under 29 C.F.R. § 2510.3-101(a)(2). Accordingly, Stephenson cannot have violated § (b)(1) when he received money, or the companies, from NFSM.

Section (b)(2) prohibits a fiduciary "in his individual or in any other capacity [from acting] in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interest of the plan or the interests of its participants or beneficiaries." As discussed above, the transactions between NFSM and Stephenson involved no plan property. Accordingly, they cannot reasonably be seen as transactions *with the plan*. Thus, even though

Stephenson engaged in a transaction with NFSM in his capacity as owner of NFS and Metro, he was not transacting with the Plan, and therefore cannot be subject to § (b)(2).

C.  TAX CODE

For the same reasons set forth above, the Court finds that the Defendant is entitled to summary judgment on Plaintiffs' tax code claims.

IV.  CONCLUSION

Based on the foregoing, the Court grants summary judgment in favor of Stephenson on causes of action two and five of Plaintiffs' Complaint. The hearing on this Motion currently set for Wednesday, December 21st is stricken. It is therefore

ORDERED that Defendant's Motion for Partial Summary Judgment (Docket No. 17) is GRANTED.

DATED   December 8, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge