IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BRENT MIDDLETON as Trustee of the National Financial Systems Management, Inc. Employee Stock Ownership Plan, et al., <br><br>　　Plaintiffs, <br><br>v. <br><br>J. HOYT STEPHENSON, <br><br>　　Defendant, Counterclaimant, and Third Party Plaintiff, <br><br>v. <br><br>BRENT MIDDLETON et al., <br><br>　　Counterclaim and Third Party Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTIONS TO DISMISS <br><br><br> Case No. 2:11-CV-313 TS |

　　This matter is before the Court on Third Party Defendants Bailey N. Hall, Scott Mee, Darwin Nelson, Thrive National, Thrive National Corporation, and Thrive Systems's ("Thrive

1

Parties") Motion to Dismiss Defendant's Third Party Complaint.[1]  Also before the Court is Plaintiffs and Counterclaim Defendants Mike Medell, Brent Middleton, Jamie Sorenson, NFSM, NFSM ESOP, and Ben Staples's ("NFSM Parties") Motion to Dismiss.[2]

## I.  BACKGROUND

In 2003, Defendant J. Hoyt Stephenson incorporated National Financial Systems Management, Inc. ("NFSM").  As part of the incorporation, the board of NFSM created an employee stock ownership plan ("ESOP"), and put all of NFSM's stock into the plan, creating the NFSM ESOP ("the Plan").  Stephenson was designated as a Plan trustee.  NFSM's revenue came in the form of "management fees" paid to NFSM by two companies also owned by Stephenson—National Financial Systems, Inc. ("NFS") and Metronomics, Inc. ("Metro").  Ninety percent of NFS and Metro's profits were paid to NFSM.

On October 15, 2007, NFSM purchased NFS.  NFSM made an up front payment for a percentage of the purchase price and issued a promissory note for the balance.  On January 15, 2008, NFSM bought Metro in the same manner.

On June 27, 2009, Stephenson entered into "default agreements" with NFSM, in which NFSM acknowledged it was in default on both the NFS and Metro notes.  NFSM then transferred all NFS and Metro stock back to Stephenson.  Stephenson did not refund any payments from NFSM for NFS and Metro.  Stephenson subsequently sold NFS and Metro to Third Party Defendant Bailey Hall.

---

[1]Docket No. 60.

[2]Docket No. 72.

Plaintiffs filed a Complaint against Defendant Stephenson alleging that he (1) breached his fiduciary duties under ERISA; (2) engaged in prohibited transactions under ERISA; and (3) violated the Internal Revenue Code.[3]  Stephenson moved for summary judgment on the prohibited transaction and Internal Revenue Code claims, which the Court granted.  In so doing, the Court held that "(1) the sale of NFS and Metro, as well as their return to Stephenson, were not [prohibited transactions], and (2) to the extent Stephenson took part in the transactions, he was not acting on behalf of the plan and thus was not subject to ERISA fiduciary duties."[4]  Thus, all that remained in Plaintiffs' Complaint was the fiduciary duty claim.

Stephenson subsequently amended his Answer and added counterclaims against the NFSM Parties as well as third party claims against the Thrive Parties.  Stephenson's third party Complaint alleges that he did not breach any fiduciary duties, but that, if he had, several of the Third Party Defendants and Counterclaim Defendants were co-fiduciaries and had also incurred liability.  Stephenson also alleged other state law claims against all parties.

In separate motions, the Thrive Parties and the NFSM Parties moved the Court to dismiss the co-fiduciary liability claims and to abstain from ruling on the state law counterclaims and third party claims.

On May 10, 2012, the Court issued an order requiring supplemental briefing.  In that order, the Court noted that though the parties had expended considerable effort on co-fiduciary

---

[3]Plaintiffs also included "causes of action" for attorney's fees and injunctive relief.  These are remedies, not substantive claims, and are therefore dependent on the three claims listed.

[4]Docket No. 36, at 10.

liability and jurisdictional questions, they had not addressed the issue of whether the fiduciary claim in the Complaint remains viable in light of the Court's previous summary judgment order. The Court therefore instructed the parties to submit memoranda responding to that question. The Court also asked the parties to discuss whether the Court would have jurisdiction over Stephenson's state law counterclaims and third party claims should the Court dismiss the fiduciary duty claim.

Having now considered the parties' submissions, the Court finds, for reasons set forth more fully below, that (1) its previous summary judgment order requires dismissal of the fiduciary claim; and (2) it does not have jurisdiction over Stephenson's remaining state law counterclaims and third party claims.

## II.  DISCUSSION

A.   FIDUCIARY DUTY CLAIM

29 U.S.C. § 1104 requires an ESOP fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries."

In their supplemental brief, the Thrive Parties contend that the Court should dismiss the co-fiduciary claim based on its previous Order. The NFSM parties argue that the Court should reconsider its Order.

The NFSM Parties contend that Stephenson violated his duty by "failing to act solely in the best interests of the ESOP."[5]  Relying in part on *Phillips v. Amoco Oil*,[6] this Court stated in its previous Order:

> [I]t is well accepted that "the ERISA scheme envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer. ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets."[7]  This is true even if the actions taken by the employer negatively affect the value of ESOP assets.[8]  Thus, as a separate ground for denying Plaintiffs' prohibited transaction claim, it appears that if Stephenson was not acting in his role as plan trustee when he participated in the decision to buy or relinquish NFS and Metro, he was not required to comply with fiduciary responsibilities.
>
> NFSM voted, through its board, to purchase NFS and Metro and to relinquish them. The purchase was not undertaken or paid for by the Plan. Though the parties dispute to what extent Stephenson participated in the decision, even if the Court were to assume that Stephenson was fully involved, the outcome would remain the same. The decision was made for NFSM as a business and not for the ESOP, with NFSM capital by NFSM board members acting in their NFSM capacities. Thus, the Court finds that, to whatever extent he was involved in the decisions, Stephenson was not subject to fiduciary responsibilities when making them.[9]

The Court's conclusion would thus seem to clearly dispense with the Complaint's fiduciary duty claim, making Stephenson's contribution claim against Third Party and

---

[5]Docket No. 91, at 5.

[6]799 F.2d 1464 (11th Cir. 1986) *affirming* 614 F. Supp. 694 (D. Ala. 1985).

[7]*Phillips*, 799 F.2d at 1471.

[8]*Phillips*, 614 F. Supp. at 717 ("[T]he fiduciary duty provisions of ERISA are not implicated in the sale of a business or a portion of a business merely because the terms of the sale will affect the terms and conditions of contingent future benefits.").

[9]Docket No. 36, at 9-10.

Counterclaim Defendants moot. Plaintiffs respond that *Phillips* is inapplicable here because Stephenson was not acting as an employer.

First, the Court notes that Plaintiffs have alleged that Stephenson took part in, or sanctioned in some way, NFSM's purchase of NFS and Metro as CEO of NFSM. To whatever extent Stephenson was involved in the transaction as a buyer on the NFSM side, Stephenson participated as an agent for NFSM, and was thus acting as an employer. *Phillips*'s language regarding employers is therefore explicitly applicable. Whatever the consequences for the ESOP of the decision NFSM's board made, the board members were acting as employers and not as ESOP trustees and therefore did not violate any fiduciary duties.

Second, the Court would note that *Phillips*'s rationale is applicable beyond the context of employer-fiduciaries. "ERISA recognizes that a person may be a fiduciary for some purposes and not others."[10] Thus, "fiduciary duties under § 1104 attach only to transactions that involve investing the ESOP's assets or administering the plan."[11] Stephenson, in his role as seller, did not make any decision with respect to the ESOP—he merely offered up assets for sale to NFSM and received the purchase price. Therefore, to the extent that the NFSM Parties challenge Stephenson's involvement as seller of NFS or Metro, the Court finds that this transaction is not governed by ERISA.

The same reasoning applies to Stephenson's alleged participation in NFSM's decision to return NFS and Metro to Stephenson via default agreement.

---

[10] *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984).

[11] *Martin v. Feilen*, 965 F.2d 660, 666 (8th Cir. 1992).

In light of the foregoing, the Court will dismiss the fiduciary duty claim.

B.  JURISDICTION

Remaining before the Court are Stephenson's state law counterclaims and third party claims.  The Court will therefore address whether it has jurisdiction over those claims.

The parties have agreed that the Court has no supplemental jurisdiction if the ERISA fiduciary duty claim is dismissed.  Therefore, the only potential basis for jurisdiction here is diversity.

This Court has jurisdiction over actions between "citizens of different states."[12]  "For purposes of diversity jurisdiction under 28 U.S.C. § 1332(a)(1), state citizenship is the equivalent of domicile."[13]  "'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another.  For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."[14]  "Residence and intent are inextricable elements of domicile.  If unaccompanied by the necessary intent, residence alone is not determinative of citizenship."[15]

The parties agree that Stephenson lived in Wyoming with his family from 2007 through mid-2009, at which point the family moved to Fruit Heights, Utah.  Movants argue that when

---

[12] 28 U.S.C. § 1332(a)(1).

[13] *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983).

[14] *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (citations omitted).

[15] *Bair v. Peck*, 738 F. Supp. 1354, 1355 (D. Kan. 1990) (citing *Gilbert v. David*, 235 U.S. 561, 569–70 (1914)).

Stephenson moved, his domicile changed to Utah. Stephenson argues that he continues to be domiciled in Wyoming.

To establish a new domicile, it is enough to have a "floating intention" to stay in the place indefinitely, even if a party also has "the general desire to return to the former domicile at some undetermined point of time."[16] On the other hand if a party has, at the time of filing, an "existing intention to return [to the original domicile] upon the happening of a reasonably foreseeable event," a new domicile is not established.[17]

"Where it appears that a party may have more than one residence, the court should use a 'totality of evidence' approach to ascertain the party's intended domicile."[18] In *Cressler v. Neuenschwander*, the Kansas District Court compiled a list of factors courts often consider in choosing between two residences:

> 1. Whether or not an individual votes where he claims domicile;
> 2. The manner in which an individual lives, taken in connection with his station in life, i.e., whether he rents or buys a home;
> 3. Whether his family and dependents have moved to the new residence;
> 4. Whether an individual's belongings have been moved to the new residence;
> 5. One's relationships with churches, clubs, and investments in the new residence;
> 6. Whether or not a place of abode is retained in the old state of residence;
> 7. Whether or not investments in local property or enterprise attach one to the former residence;

---

[16]*Bair*, 738 F. Supp. at 1356 (citing *Crowley*, 710 F.2d at 678).

[17]*Id.*

[18]*Cressler v. Neuenschwander*, 930 F. Supp. 1458, 1460 (D. Kan. 1996).

      8. Whether one retains affiliations with professional, religious and fraternal life of the former community; and
      9. What domicile is claimed for tax purposes.[19]

These objective indicia of intent are accorded far more weight than a parties' self-serving statements of intent.[20]

"The determination of diversity jurisdiction is generally made from the complaint. When the allegations are challenged, the party asserting diversity jurisdiction has the burden of proving them by a preponderance of the evidence."[21]

Finally, the Court notes that a presumption has "been recognized favoring an established domicile over a newly acquired one."[22] "On the other hand, the place where a person lives is assumed to be his domicile unless the evidence establishes the contrary."[23] Thus, while Stephenson has the ultimate burden of proof, movants have the burden of production. Where a party has recently moved, but evidence exists to support both his former residence and his current residence as domicile, the impact of these countervailing presumptions is limited—the Court instead places its focus on whether a plaintiff can sustain his ultimate burden of proof.[24]

---

[19] *Id.* (citing *Computer People, Inc. v. Computer Dimensions Int'l, Inc.*, 638 F. Supp. 1293, 1295 (M.D. La. 1986) (citing *District of Columbia v. Murphy*, 314 U.S. 441 (1941))).

[20] *Bair*, 738 F. Supp. at 1356 (citing *Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 556 (5th Cir. 1985)).

[21] *Id.*

[22] *Id.*

[23] *Cressler*, 930 F. Supp. at 1460.

[24] *Bair*, 738 F. Supp. at 1356.

1. CURRENT RESIDENCE, LOCATION OF FAMILY, MANNER OF LIVING, FORMER ABODE MAINTAINED

The parties agree that Stephenson lived in Wyoming with his family from 2007 through mid-2009, when they moved to Fruit Heights, Utah.  Stephenson states that he still owns a home and operates a ranch in Wyoming and does not own a home in Utah.

Movants respond that Stephenson lives in a home in Fruit Heights, Utah with his wife and children, and that the home is owned by the MLK Family Living Trust, of which Stephenson and his wife are the trustees.  Movants note that there are "family photos on the wall of the den," that Stephenson's vehicles are usually kept at the Fruit Heights home, and that Stephenson's children are enrolled in school in Davis County, Utah.  Stephenson does not deny any of these contentions.

As co-trustee of the trust that owns the home, Stephenson's relationship to the Fruit Heights home is closer to that of owner than lessee, indicating an intent to remain in Utah on a more permanent basis.  This conclusion is strengthened by the presence of Stephenson's wife, children, and belongings in Fruit Heights.  The inference is counterbalanced, however, by Stephenson's retention of a home in Wyoming.  Accordingly, these inferences cancel each other out and the Court finds the evidence inconclusive on this factor.

Stephenson claims that he currently splits his time between Wyoming, Utah, and Georgia because of this and related litigation, but once these matters are resolved he intends to spend most of his time in Wyoming.  Because the Court will not accept self-serving statements of intent that are unsupported by objective indicia, this statement is not accorded any weight on its own.

2. VOTING

Stephenson avers that he is registered to vote in Wyoming and does not vote in Utah. Movants respond that Stephenson has not disclosed whether he has voted in Wyoming since moving to Utah.

Voter registration and voting practice, both pertinent, are separate inquiries.[25] While registration to vote in one state may indicate a desire to stay there indefinitely, a registree who moves away and does not thereafter vote may therein indicate the opposite. The details of Stephenson's post-move voting practice are thus required in order for the Court to draw inferences. Accordingly, the Court finds that this factor is inconclusive.

3. DRIVER'S LICENSE

Stephenson also states that he has a Wyoming driver's license and does not hold a Utah driver's license. The Court finds that Stephenson's decision to refrain from obtaining a Utah driver's license is indicative of an intent to return to Wyoming.

4. LOCATION OF ENTERPRISES

Stephenson states that he operates a ranch in Wyoming. Movants respond that from July 2009 until March 8, 2012, Stephenson maintained an office in Layton, Utah, from which he ran various businesses.

---

[25]*See Murphy*, 314 U.S. at 456 ("Whether or not one votes where he claims domicile is highly relevant but by no means controlling"); *see also* 13E Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3612 (2009) (stating that courts look to "voter registration and voting practices" when ascertaining domicile).

Whether diversity exists is determined based on the facts as they were at the time a suit is filed.[26] Stephenson has presented no evidence relevant to whether, at the time of filing, this office was meant to run as a temporary or permanent operation. Nor has there been any evidence as to the extent of Stephenson's personal involvement in the management of his Wyoming ranch. The Court therefore finds this factor inconclusive.

5. TAXES

The parties agree that Stephenson claims Wyoming as his domicile for federal and state tax purposes. This factor therefore supports a finding of domicile in Wyoming.

6. AFFILIATIONS

Stephenson makes no allegations that he maintains relationships with any church, club, or fraternal organization in Wyoming. Movants state that Stephenson holds a leadership position in the LDS church in Fruit Heights, and that his membership is recorded in Utah as opposed to Wyoming. Stephenson does not contest these statements. Accordingly, the Court finds that this factor weighs in favor of finding that Stephenson was domiciled in Utah at the relevant time.

7. OTHER INDICIA

Movants note that Stephenson is a member of GUS Recreation, LLC, S&M Financial, LLC, and a part owner in Greased Lightning, all of which are Utah companies that own boats, vehicles and other items in Utah. Movants also claim that Stephenson owns jet skis and a trailer with a Utah resident, that the accountant who prepares his tax returns is located in Utah, and that he has a personal bank account at Zion's Bank, in Utah. In his supplemental brief, Stephenson

---

[26] *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991).

does not contradict these assertions. These facts therefore weigh in favor of finding domicile in Utah.

    7.  CONCLUSION ON JURISDICTION

The Court notes that this is a close issue. For every objective indication of Stephenson's intent to return to Wyoming at the time of filing, a countervailing fact is alleged from which the Court finds it reasonable to infer that Stephenson intended to remain in Utah indefinitely. The totality of the evidence therefore presents an ambivalent picture at best.

Stephenson carries the burden of proof by a preponderance of the evidence. Proof of a state of equipoise between Wyoming and Utah will not suffice—rather, Stephenson must show it is *more likely than not* that he did not intend, at the time of filing, to remain in Utah indefinitely.

As a court of limited jurisdiction, there is a presumption against this Court exercising jurisdiction.[27] The party invoking jurisdiction therefore bears the burden of establishing that federal jurisdiction exists.[28] Stephenson has not carried his burden of establishing domicile in Wyoming. It follows that complete diversity does not exist between the parties and this Court is without jurisdiction over Stephenson's state law counterclaims.[29]

---

[27]*Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted).

[28]*Id.* (citation omitted).

[29]Movants have also contend that the Court should abstain from ruling on the state law counterclaims and third party claims based on a parallel action pending in state court. Because the Court finds it does not have jurisdiction, it need not consider movants' abstention argument.

## III.  CONCLUSION

In light of the foregoing, the Court will dismiss Plaintiffs' fiduciary duty claim against Stephenson, and will dismiss all other counterclaims and third party claims for lack of jurisdiction.  It is therefore

ORDERED that the Thrive Parties' Motion to Dismiss Defendant's Third Party Complaint (Docket No. 60) is GRANTED.  It is further

ORDERED that Plaintiffs and Third Party Defendants' Motion to Dismiss (Docket No. 72) is GRANTED.  The Clerk of the Court is directed to close this case forthwith.

DATED   June 14, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge